REDMANN, Chief Judge.
A father appeals from an increase in child support and from a slightly later refusal to reduce child support. We consider the two rulings together.
The father’s gross income was $2,750 a month and the mother’s $1,320 at trial time. The record does not reveal what the father’s income was in 1976 when $650 was fixed by agreement (an amount maintained by reference in the 1978 separation and 1979 divorce judgments). It does reveal a $250 a month increase in the year before the trial. In the absence of evidence to the contrary, it is a reasonable assumption that earnings have increased fairly substantially in the high-inflation years following 1976. Appellant’s brief’s suggestion that he could have been earning more in 1976 than 1980 is a possibility that suggested at first a remand to us; but we will accept the general assumption as prima facie correct in the absence of an affirmative averment by appellant to the contrary. We conclude that it is a fair inference that the father’s monthly income has increased by far more than the last $250. The mother’s monthly income has also increased by perhaps $350 since 1976. At the same time the expenses of the children (14 and 10 at trial time) have also increased.
In addition to their earnings, the parents have income from a two-family house their former community owned. One part is rented for $250 monthly and the mother and children live in the other, larger part of the house. The monthly mortgage note on the house is now $342, which is paid with the $250 rent plus $92 from the mother. If one assigns half of the note, or $171, to the part of the house rented for $250, it may be fairly theorized that that half of the house produces a net $79 monthly income (save for repairs and maintenance) that the father is already contributing, in effect, towards the children’s needs. To put it another way, the mother and children enjoy the use of living quarters worth at least $250 at a net cost of $92, which is a $158 benefit attributable to the common ownership of the house by mother and father, and half of that $158 advantage, or $79, is attributable to the father.
The mother’s evidence is that she requires $1,794 monthly in addition to keeping any part of the house rent attributable to the father. Because the children are aged 10 and 14 and have school and summer school expenses, an analysis of the mother’s statement of expenses (about a third of which is for the children alone) suggests that an approximation of $1,200 monthly for the two children is not unfair. We also recognize that the mother’s own non-monetary contribution to the children must be weighed in striking a fair division of that $1,200 cost as between the father netting over $2,000[1] monthly and the mother netting $1,014 monthly. The net earnings alone, in light of the living expenses, might suggest that the father should pay at least twice what the mother pays, or $800 to her $400, because the mother’s level of earnings does not afford to her as much disposable income as does the father’s. One other relevant factor is that the father’s employer supplies him an automobile, saving him the costs he would otherwise have to expend for an automobile.
On the other hand, the father does show unusual obligations requiring $196 monthly (for 48 months) on a debt consolidation loan and $214 monthly on a lot in Baton Rouge he bought at employer’s cost when he expected to live there. These debts are in addition to a net, after rentals, of $356 monthly on the New Orleans house he *997 thereafter acquired. He also owes $5,000 borrowed on a 90-day basis for what he describes as his “monthly deficits” of expenditures over income, and he pays $50 a month interest on that debt.
Yet it must be said that a father cannot spend $214 monthly on an investment (for that is what the Baton Rouge lot has become), and ask the court to reduce the amount of his child support on that basis. If there were money to spare it would be to the advantage of father and children (as prospective heirs) that the father invest rather than spend; but at the moment there is no money to spare because of all of the father’s unavoidable obligations. Presumably the sale of that lot would not only eliminate that $214 monthly note but might also provide a surplus to reduce other debt.
The trial judge had a most difficult task in giving appropriate weight to all of the mentioned factors. Ours, too, is a most difficult task. We are persuaded, however, that the trial judge’s discretion is not as great in cases of child support as in cases of personal injury general damages under La. C.C. 1934(3), where an award of $1,000 could not be construed to be abusive if $900 were not excessive. In cases of child support, all of the factors must be considered and the range of discretion is necessarily much narrower. We conclude that the award of $1,000 from the father should be reduced to $900 monthly. At that rate the father, with take-home pay of about twice the mother’s take-home pay of $1,014, will contribute about three times what the mother contributes towards the cash needs of the two children, rather than about five times her cash contribution. We do not suggest any mathematical formula by this observation; these proportions would be inappropriate in the case of spouses whose overall circumstances are different. The overall circumstances of this case persuade us that the child support award from the father must be amended to $900 a month.
Although we amend the last setting of child support, we affirm the trial court’s refusal to further reduce. The father moved reduction on the basis that he earlier was having no federal income tax deducted and now his employer was deducting $550 a month. The record does not establish the correctness of that amount, and we have noted the large interest deductions apparently available. Presumably the father owes some withholding, but his obligation towards his children must also be satisfied. It is a hard but inescapable fact that the increased cost of operating two households rather than one often makes available funds inadequate for both.
Award of $1,000 monthly amended to $900; dismissal of later rule to reduce affirmed, at father’s cost.

. The father shows $550 federal income tax withholding, and this figure may be adjustable because of substantial interest payments on his $100,000 house and $19,500 lot in Baton Rouge (as well as his share of interest payments on the former community’s two-family house).